## Richmond.

### VANDERWERKEN v. GLENN, TRUSTEE.

#### June 4th, 1888.

1. CHANCERY PRACTICE—*Corporation—Stockholders—Assessments—Stat. of Limitations.*—In suit wherein a corporation is a party, the decree binds the stockholders, though they be not personally parties; and assessments made, under decree therein, payable to, and collectible by, the trustee of the corporation, may be sued for by him in his own name; and the statute of limitations begins to run against those assessments from the date of the decree.

2. CORPORATIONS—*Membership—Proof.*—Defendant in action for assessment had agreed to subscribe for stock of the corporation under its then name. His proxy participated in organizing the company, and on his motion the corporate name was changed to that it bore at the time of the assessment. Defendant's name was on the company's books, as a stockholder;

HELD:
> The evidence is sufficient of his membership of the present company.

3. IDEM—*Books—Evidence.*—In such action, books identified as the company's, by its superintendent and its trustee, and which had been proved to be such in the suit to which the company was party; and the same used by the commissioner as the basis of his confirmed report, should · be admitted against the defendant in evidence of his membership, in the absence of discrediting circumstances.

Error to judgment of circuit court of city of Alexandria, rendered October 5th, 1886, in an action of assumpsit removed thither from circuit court of Alexandria county, wherein John Glenn, trustee of the National Express and Transportation Company, was plaintiff, and Gilbert Vanderwerken, was defendant.

The object was to recover of the defendant the sum of $1,500— that being thirty per cent. upon the subscription by him for fifty shares of the stock of said company—a corporation chartered and organized under the laws of Virginia. To the declaration there was a demurrer, which was overruled; whereupon the defendant pleaded the general issue and fifteen special pleas. During the trial there were several bills of exceptions taken by the defendant to the rulings of the court. The verdict and judgment being against the defendant for $1,500, with interest from January, 3d, 1881, he brought the case here upon writ of error.

*F. L. Smith, A. L. Merriman,* and *Christian & Christian,* for the plaintiff in error.

*John Howard,* and *Charles Marshall,* for the defendants in error.

HINTON, J. (after stating the case), delivered the opinion of the court.

The only questions raised upon this record of sufficient importance to be noticed naturally resolve themselves, in our judgment, into four, and they may be briefly stated as we come to discuss them.

The first of these arises upon the demurrer, and presents for decision the question whether John Glenn, trustee, can maintain this action in his own name. And the solution of this question does not, in our judgment, depend, as it seems to be erroneously supposed to depend, upon the construction to be given to section 17 of chapter 141 of the Code of 1873, but upon considerations of an entirely different character.

As the record shows, the National Express and Transportation Company, soon after its organization, became involved in debt and determined to suspend its operations, and, accordingly, on

the 20th of September, 1866, the president of the company, acting under and in pursuance of an order and resolution of the board of directors, executed a deed of trust to three trustees for the benefit of the creditors of the company. In this deed the unpaid subscriptions of stock were expressly assigned, along with the other property and choses in action of the company, as a part of the trust fund with which to pay the debts; but there was no assignment of the power vested in the president and directors, by law, to determine upon and make calls for the unpaid balance of subscriptions, and that power, as a consequence, remained with the directors. In this state of the case, upon the failure of the president and directors to make the proper assessments to enable the trustees to fulfill the objects of the trust, it was the peculiar province of a court of chancery, upon the application of any creditor interested in the application of the trust, to administer the remedy. This was done by the court in this instance, when, by its decree of December 14, 1880, it decreed the assessment of thirty per cent. of the unpaid stock to be paid to the trustee, who, by the same decree, was substituted in the room and stead of the surviving trustees under the before-mentioned deed of September 20, 1866, and directed him to take such steps as he might be advised to collect said assessment. And this was in accordance with numerous precedents, a few of which only need be cited—*Salmon* v. *Hamborough Co.*, 1 Cas. in Chy. 204; *Hall* v. *U. S. Ins Co.*, 5 Gill, 484; *Sanger* v. *Upton*, 91 U. S. 56; *Scoville* v. *Thayer*, 105 U. S. 155; *Glenn, Trustee,* v. *Williams,* 60 Md. 93.

To this suit the stockholders, in their individual capacities, were not necessary or proper parties, and they were, therefore, not made parties, but were left to be represented by the company. And for this, also, the precedents are numerous. In *Salmon* v. *Hamborough Co., supra,* the demurrer of the stockholders was placed upon the ground that they ought not to have been made parties. And upon appeal to the House of Lords from the decree of the Lord Chancellor, the demurrer was sustained—

thus showing that at that early day creditors might get relief against the company without making the stockholders parties.

In *Hall* v. *U. S. Ins. Co.,* 5 Gill, 484, which was a case like the one with which we are dealing—namely, an action at law to recover of a stockholder an assessment upon an unpaid subscription to capital stock, by the order and direction of a court of equity, in a proceeding to which the stockholders were not parties—the objection that the stockholder was not a party was made; but the lower court overruled the objection, and upon appeal that ruling was sustained.

In *Ogilvie* v. *Knox. Ins. Co.,* 22 How. 387, although the stockholders were made parties personally, it will be observed from a quotation that I shall make that the stockholders were regarded as concluded as to all averments respecting the corporation and its property by the decree *pro confesso* against the corporation. Say the court, in speaking of that decree: "The bill was taken *pro confesso* as against the corporation. The other defendants, being corporators, are consequently concluded as to the averments of the bill affecting them. As stockholders who have not paid in the whole amount of the stock subscribed and owned by them, they stand in the relation of debtors to the corporation for the several amounts due by them; and as to them this bill is in the nature of a demand in which they are called on to answer as garnishees of the principal debtor." And see also *Sanger* v. *Upton,* 91 U. S. 58, where the court holds that the stockholder is "an integral part of the corporation," and represented by the corporation *Glenn, Trustee,* v. *Williams,* 60 Md. 93; *Glenn, Trustee,* v. *Semple,* 80 Ala. 380.

And now having shown that the decree, so far as it affects the corporate property, is conclusive upon the stockholders, we are brought face to face with the question, whether the trustee, who had been directed by the decree to collect this assessment by suit or otherwise, as he might be advised, can maintain a suit for such assessment in his own name. And, after a careful examination of the subject, we think he can. For, while the rule of

the common law does not allow au assignee of a chose in action to sue in his own name, we yet think that this case falls within a well-defined exception to the rule—namely : that where a chose in action has been assigned, if the debtor, expressly or impliedly, recognizes the right of the assignee, he comes under an implied promise to pay the assignee, upon which the latter may maintain a suit in his own name "—an exception which has been distinctly recognized and acted upon by the supreme court of the United States in the case of *Tiernan* v. *Jackson,* 5 Peters, at page 597, where the court says : " The general principle of the law is, that choses in action are not, at law, assignable, but if assigned, and the debtor promises to pay the debt to the assignee, the latter may maintain an action for the amount against the debtor as money received to his use." Under this exception to the general rule all that is required to entitle the assignee to sue in his own name is that there shall appear to be an express or implied promise on the part of the debtor to pay the debt to the assignee. Such a promise, to my apprehension, was given when the stockholders who were authorized by their charter to contract and be contracted with in the name of the company, by the deed of September 20, 1866, passed the unpaid subscriptions to the trustees, and so expressly agreed that any future calls or assessments that might be necessary should be payable not to the company, but to the trustees.

But again, the deed of trust gave the trustees appointed therein the right to receive the unpaid subscriptions, and that right devolved upon the substituted trustee immediately upon his appointment. But this right of action depended upon the call to be made by the court of chancery. *Chandler* v. *Siddler,* 3 Dill. C. C. R., 477 ; *Scoville* v. *Thayer,* 105 U. S., 143. That cause arose at the same time that this trustee was appointed.

When, therefore, this cause of action arose, as it did upon the making of the call, it accrued to the substituted trustee, who, in our judgment, might well, under the decision of *Lawson* v. *Lawson,* 16 Gratt. 230, bring an action in his own name.

Upon the next point, which is whether the statute of limitations in this State bars this action, it is only necessary to say a word. All of the cases from *Baltimore Turnpike Co.* v. *Barnes,* 6 Harr. and J. 57, to *Scoville* v. *Thayer,* 105 U. S., 143, including the group of cases reported in the 91st volume of the United States Reports, concur in holding that the call of the court is the foundation of the assignee's right of action.

This call was made on the 14th December, 1880, and this suit was instituted in April, 1885, less than the statutory limitation, which is five years. This would seem to conclude the question upon authority; and that it is equally clear upon principle is fully shown by the case of *Glenn, Trustee,* v. *Semple,* 80 Ala. 161, where the reasons are clearly stated in the opinion of the court, and many of the authorities are collected.

As to the third objection, namely, that there is no proof of the defendant being a stockholder, we regard it as utterly untenable. For the record not only discloses the fact that he agreed to subscribe for fifty shares of the stock, but that he was one of the subscribers who executed a power of attorney by which they acknowledged themselves stockholders of the company, and that they had appointed M. G. Harman, John Echols and John D. Imboden their proxies to represent them in any general meeting of the stockholders held in six months from the 27th October, 1865. And the record shows that the proxies not only took part in the formation and organization of the company, but that it was on the motion of M. G. Harman, one of these very proxies, that the name of the proposed company was changed to the name of the National Express and Transportation Company. This I regard, as this court said in *Grays* v. *Turnpike Co.,* 4 Rand. 582, as "abundant evidence to prove the defendant a subscriber." Moreover, the name of the defendant appears on the books of the company as the holder of fifty shares of its stock, and that the stock books of such a company are *prima facie* evidence of who are its stockholders, is well settled. *Glenn* v. *Orr,* 96 N. C. 415; *Owings* v. *Speed,* 5 Wheat. 420;

*Turnbull* v. *Payson*, 95 U. S. 418. And that as against such a subscriber the corporation, or substituted trustee, has the right to enforce payment of the unpaid subscriptions is not, and, indeed, cannot be well controverted. *Kidwelly Canal Co.* v. *Price*, 2 Price, 189; *Edinboro Academy* v. *Robinson*, 37 Penn. St. 213; *Athol Music Hall Co.* v. *Carey*, 116 Mass. 474; *United Hebrew Assn.* v. *Bershimal*, 130 Mass. 328; *Stuart* v. *Valley R. R. Co.*, 32 Gratt. 147.

As to the identity of the books offered in evidence as the books of the company, we think there can be no reasonable doubt. In the chancery suit the superintendent and trustee not only enumerated and identified those books before the commissioner, whose report based thereon was confirmed by the court, but proved the handwriting of the various officers of the company by whom they were written and kept; and Mr. Howard, who was present when those books were produced before the commissioner by the superintendent and trustee, testified in this case that the books exhibited before the court and jury were those identical books. All this, taken in connection with the fact that they were the same books which had been previously judicially recognized and accepted as the genuine books of the company, and that there is an entire absence of any evidence in the record tending to cast suspicion on their genuineness, was certainly sufficient to justify the court in admitting them as evidence before the jury.

As to the other objections made for the plaintiff in error, we do not regard them of enough importance to call for any notice at our hands. The answers to them all are either obvious or have been suggested in the course of this opinion. We find no error in the judgment complained of, and it must be affirmed.

LACY, J., dissented.

JUDGMENT AFFIRMED.